Are you ready Mr. Murphy? Thank you. May it please the court, good morning. My name is Mark Murphy. I'm here on behalf of Teamsters local union number 96. Just to give you a little factual background about what this case concerns, this is a case where the union is seeking reversal of the district court's decision. Hold on just a second. We got counsel on the other side. Oh, that's where you were sitting. Okay. I thought I used to see you there. Go ahead, I'm sorry. As I was saying, this case involves the union's challenge in seeking to reverse the district court's decision that vacated a labor arbitration award rendered pursuant to a collective bargaining agreement between the union and the company Washington Gas. Reversal of the district court's decision and enforcement of the arbitration award is appropriate because the district court improperly stepped into the shoes of the arbitrator and substituted its own judgment for that of the arbitrator. Now the parties as part of their contract, collective bargaining agreement, agreed and bargained for an arbitrator to resolve disputes over the interpretation of their collective bargaining agreement. Specifically, the contract provided that the arbitrator with broad authority to interpret and apply provisions of the labor contract. That's precisely what this arbitrator did here and the district court should not have disturbed the arbitration award. Now there's no dispute. The law is very clear that judicial review of a labor arbitration is, as this court has explained, extremely narrow. In fact, it's amongst the narrowest known to the law. The court's role in reviewing arbitration awards is simply to determine only whether the arbitrator did his job. Not whether he did it well, not whether he did it correctly or reasonably, but simply whether he did it. So if the court, district court in this case, disagreed with that arbitration award, that's not enough. He needed to determine that the arbitrator abandoned his job of interpreting and applying the contract. And thus, as the Supreme Court has explained in Garvey, if an arbitrator is arguably construing or applying the contract, then his decision should not be disturbed. An arbitration award must not be disturbed regardless of whether the reviewing court believes the arbitrator committed a serious error or if his award was improvident or even silly. And as the union explained in its brief, because the district court far exceeded its role in reviewing the arbitration award here, it conducted what we essentially argue is a de novo review of the arbitration award. The court's decision should be reversed and the case should be remanded with instructions to enforce the arbitration award. Now, the particular facts of this case are not complicated. This case involves the arbitrator's interpretation of a contractual provision with respect to removal of an arbitrator from the party's permanent panel. The contract states as follows. During the term of the contract, either party may for any reason strike up to two arbitrators from the panel of arbitrators. If the company or the union elects to strike an arbitrator, it must do so no later than 24 hours before the time the arbitration hearing is scheduled to begin. Now, in this case, the arbitration hearing was a termination case. The employee was terminated back in February of 2012. The arbitration hearing was scheduled for August 14, 2012. Prior to that date, the company sought and was granted two postponements, one to November 15, one to December 6, 2012. The hearing was set to go forward on the 6th of December. At the end of November, the company notified the arbitrator and the union that it was invoking the contract provision and removing that arbitrator from the panel. The union disagreed with that position, said that's not consistent with the contract provision, and suggested that the parties move on to arbitration. It also suggested that that decision itself, the interpretation of the removal provision, was inherently part of the arbitrator's job. Now, of course, the company disagreed with that. In fact, the company did not show up at the hearing. Can I ask you about that? What, if any, consequence or significance is there or should there be in respect to the employee's failure to appear and participate? Yes, Judge Davis. We would say there's a significant impact to that. The parties agreed to resolve all their disputes under the contract through an arbitrator. I understand that. I mean, they got notice. The company got notice. Of course they got notice. And they just decided we've stricken this arbitrator and we're not even going to show up. Not even to observe what happens. Yes, Your Honor. What we believe they did was essentially said our version and our interpretation of the contract and the removal provision trumps the union's, and therefore we're standing in our interpretation and nothing the arbitrator can do is going to change our mind. So they didn't present any argument. So my question is, is there any significance in that? In other words, would the case be here in a different posture? Obviously it would be on the facts, but on the law, would the case be before us in any different posture? Had they appeared, made the arguments that the arbitrator was without authority, lost, and then gone to district court? The union would say no. It's simply what the court is looking at is the decision of the arbitrator. I don't know what the company would have presented as far as evidence. I assume they would have contested our position. Well, they could have argued that there's no ambiguity, late nor otherwise, that what they did in striking the arbitrator was perfectly consistent with the agreement. That's right, Your Honor. They could have argued whatever they wanted. At the end of the day, what the court looks at is whether or not the arbitrator My question to you, and I'm not sure I'm expressing it or you're understanding it. Is there any significance? I guess, is there a waiver of some sort or forfeiture of some sort? Or were they entitled, as a matter of law, did they have the choice of either showing up and contesting the arbitrator's action and then going to district court on a motion for vacator? Or not showing up at all, waiting until the arbitration award was made, and then going to district court? Is there any significance to that? I don't think that's been briefed, right? No. The union would say that with respect to their choice, they made their choice. We don't think there's any significance. I'm a little surprised that that's your answer. Frankly, I thought your answer might be, yeah, Judge. They waived this objection. But that's not your answer. I think in our brief, we do say that there are certain arguments that they may have waived with respect to procedural issues that they should have and could have raised during the hearing. The real issue, though, Your Honor, is if they had shown up and the arbitrator still ruled in our favor and said, I find that this is my interpretation of the removal provision, I still believe I have jurisdiction, and ruled, they still certainly could have gone to district court and said, we don't believe that's appropriate. And they might have persuaded the arbitrator, through contrary argument, that they were right. Well, that's the whole point of having an arbitration procedure, Your Honor, in labor contracts is to certainly move things along. Here we are more than two years later, and that's absolutely right. Now, what the arbitrator did look at and what was the issue of the case was the language itself. And the question was, was it ambiguous? And the union argued with respect to rescheduled hearings, it certainly was ambiguous. And this court has ruled that the question of whether a term, a contract term in a labor contract, is ambiguous, that in itself is part of the labor arbitrator's interpretation of the contract. That was in the PPG Industries case and the Intermet Corp case. So what we're saying is the arbitrator did exactly what he was bargained for, what the parties chose him to do, which is he took a contract term, the union said it was ambiguous, the company said it wasn't. What did the arbitrator do? He went and looked at bargaining history to determine whether or not there was anything in this bargaining history that would allow him to reach his conclusion. And there was. This wasn't the first time this happened, in fact, with these two companies, with these two parties. In the previous negotiation, under the previous contract, the company did the same thing. They tried to remove an arbitrator. They didn't show up at hearing. In that contract, the language was only during the term of the contract, any party could remove an arbitrator. So the issue was, during the term of the contract, when an arbitrator is appointed, can he still be removed? The arbitrator ruled, no, once I'm appointed, I've issued decisions, you're stuck with me. The parties, at least the company, didn't like that, so the next round of bargaining, they went and said, we need to change this. We want to insert language that says a party can remove an arbitrator any time up to before the first witness is sworn in a hearing. The union said, we don't want that. That's going to cause too much delay. That's going to cause too much time consuming. We're happy with the language where it is. They reached a compromise. The compromise was 24 hours before scheduled hearing. That was heard by the arbitrator. What did you say? 24 hours before scheduled hearing? Before the hearing is scheduled to begin. That's two different things. I actually believe it can be read three ways, but the language is the time for the time the arbitration hearing is scheduled. Right. So we're modifying the word time. We're trying to find out what date that is. So it could either be the arbitration hearing is scheduled, the time for it is scheduled, or we could treat the hearing as the object that modifies time and read it the arbitration of the scheduled hearing, a hearing which is scheduled. Yes, sir. And focus on the hearing date. Yes, sir. So you have a date either before June 1 when it was scheduled or before August 14 when the hearing was scheduled to begin. Right. It could mean either, right? Sure. And your questioning shows that the ambiguity with respect to that language, and, of course, when you say we, the law is that it's not the court that determines whether it's the first interpretation, the second interpretation, or the third interpretation. Well, there's a limit to that because the whole thing is contractual, and to the extent that we're looking at the overall authority of the arbitrator, we look at the agreement, and that's a court issue. Sure, but there's no— The arbitrator, I guess, can decide his own jurisdiction and resolve these issues. I'm not sure what their position on that is. They believe, they don't deny the arbitrator had the authority to make the decision. They just disagree with whether it's ambiguous, and the arbitrator should have decided. Are you asking about the company's position, Your Honor? Yeah. I think what the company is, and Mr. Santucci, I'm sure, will articulate their position, but they believe that their unilateral decision to remove the arbitrator and impose the company's interpretation of the contract provision thereby removed jurisdiction from the arbitrator, so he was without power to conduct the hearing. The union's position is that— Why don't you address the one question? This is the issue given to the arbitrator in this case, on this point, whether he has authority to decide whether he's removed or not. It might be affected by the fact that he's going to get $6,500 instead of $2,000. We have that opinion. How do you take that on? Well, I think that argument is without merit, Your Honor, frankly. The record really is that there was a $2,000 cancellation fee. There was a $6,000 or so fee that was split by the party. So really, he was paid almost as much as he would have if he conducted the whole hearing. And the fact of the matter is the only case that the company cites to with respect to that is an arbitrator that was being removed from a permanent panel and that was a lucrative position. This arbitrator, he's gone. This is the last case he's heard. So it's not an issue of him earning money going forward. So your argument is that there's not enough money to affect buy-in. It's de minimis. One point is that the real issue here is the district court's decision. And what happened with the district court is the district court was very, very opposed to what happened in this case because they read the contract language. In fact, what Judge O'Grady did was he sat as the arbitrator. He took off his judicial robes and he said, I'm going to be the arbitrator in this case. And I'm looking at this and I don't see any ambiguity here. And therefore, he said the arbitrator got it wrong. And he indicated to the union when the union suggested ambiguity is part of interpretations for the arbitrator even if he gets it wrong, even if you disagree with him. He simply said that's not the law. Well, we would submit, the union would submit that that is the law, that part of bargaining for an arbitrator is that's who you get to decide your cases. We're not going to win every case. The union is not going to prevail in every case. The company is not going to prevail. But that is, under federal labor law, that is the preferred method of resolving disputes. So our whole point, Your Honors, is that the judge overstepped here. He didn't recognize there's a very, very narrow job for a court to do in reviewing an arbitration decision. And what he really did was a de novo review. And I take it that the argument is that in violation of the CBA, the arbitrator here, quote, altered, extended, or modified. Sure, and you hear that. My time is up, and I'll certainly respond to that, Judge Davis. You hear that all the time in decisions where a company comes and tries to— You say all he did was interpret it. You have to interpret it, right? You have to interpret and apply. So he didn't alter it. He didn't add anything. The district court said he added initially scheduled. Well, he didn't do that. All he did was he chose between plausible contentions, and that's what the job of the arbitrator is. We would ask that— Well, that's the third interpretation I suggest exists. It says hearing is scheduled. And the argument could be that the November 15 and December 6 dates were not scheduled by the parties. They were postponements of a hearing that had already been scheduled. And a postponement may not fit into the category of what the contract says is scheduled. So that is a third—seems to me a third possible. Sure, you're on it. That's the one the company advocates. Sure, and again— That postponement is a form of scheduling. Right, and that was the job of the arbitrator to go through however many options he thought, that plausible contentions that provision could have made. He did that. He listened to bargaining history, which is perfectly appropriate, and he rendered an award. And we're standing here right now asking that that award be affirmed. Thank you. Thank you. Let's hear from the company. Good morning, Your Honors. May it please the Court, Joe Santucci on behalf of Washington Gaslight Company. Judge Davis, to turn to your question, there was no waiver here. I am not sure why the company decided not to participate. I'm assuming the company believed that had it shown up for the hearing, it would have consented to having Arbitrator Ross hear the case. It chose not to. Had we gotten the same decision, I suspect I would still be standing here before you today. Exactly. And much, I think, for myself, in a much better light. Because, in fact, you might well have persuaded the arbitrator, had you participated, that he was wrong. And you wouldn't be here at all. And that might all be true, Your Honor, but the fact remains the arbitrator did go ahead and issue a decision. So apart from the other legal issues, why should a court indulge? You see where I'm going. You see exactly what I'm saying. Just as a matter of judicial administration, if a party didn't show up before a district court, I suppose on a matter of law, we'd still have jurisdiction when they appeal. Anyway, go ahead. I don't want you to take up. I think it goes to Judge Niemeyer's point earlier. We are not saying that this matter was not arbitrable. I mean, this matter is arbitrable. It shouldn't have been arbitrated by Arbitrator Ross. I mean, that's obviously our position, that he had no authority to hear that case. But the fact remains that we're dealing with a contractual issue here, and regardless of whether our client had shown up at that hearing. Let's get to the crux of that. If it's ambiguous, and we can talk. You've heard, I think, there are three possible positions, at least, on reading this. But if it is ambiguous, and he decides that the best reading of this ambiguous clause is that notice has to be given before June 1, we shouldn't interfere with that, right? I would say two things, Your Honor. One, I have to concede that there is an ambiguity, and obviously, you know, we do not believe there's any ambiguity in the language. The language says, if the company or the union elects to strike an arbitrator, it must do so no later than 24 hours before the arbitration hearing is scheduled to begin. You left out a word, an important word, the most important word. Before the time, doesn't it say? No, it says no later than 24 hours before the arbitration hearing is scheduled to begin, I believe, Your Honor. Oh, okay. That's a lot different than what I have. It doesn't have the time before the time, the arbitration. My understanding is Article 18, Section 16A says no. Okay, fair enough. I'll just take a look. And I think, Your Honor, if you look at this case. Do you think the controlling word is hearing, or do you think the controlling word is scheduled? I think Judge O'Grady got it exactly right. It is scheduled. It is scheduled. It is scheduled. Well, if it's scheduled, it was scheduled on June 1. Well, Your Honor, one thing this court said in that. I thought your position was before the hearing date. Well, I'm saying before the arbitration hearing date is scheduled to begin. What Judge O'Grady said, you have to insert the words initially scheduled. No, no, no, no. Let's leave that aside. That's a different issue. I'll take that up with you, too. But I'm trying to find out whether the date that we're looking at is the date it is scheduled, the scheduling, or the date of the hearing. The date of the hearing. JA page 134 reads the way Judge Niemeyer says it reads. The words, the time. Twenty-four hours before the time the arbitration hearing. But our position is that the actual hearing date. Well, now, if it is the time, that's pretty key because time is a date. And it says the time, and now it's modified by the clause, the arbitration hearing is scheduled. Now, it seems to me the arbitration hearing is scheduled on the date June 1. You could read it another way. I think it's a little more strained. Before the time of the arbitration hearing and read scheduled as modifying hearing. A scheduled arbitration hearing. But it doesn't quite say that. It says the date it is scheduled. Now, then you get the third problem is whether a postponement after it is scheduled, whether a postponement amounts to this type of arbitration hearing being scheduled. And I'm not sure a postponement is the scheduling of the hearing. It's just changing the date. Well, if you look at. It was already scheduled on June 1. But regardless, I think there are at least two, maybe three, maybe four interpretations. And if you have that ambiguity, isn't that the specific role an arbitrator has? Obviously, we, Your Honor, we are not going to concede ambiguity as you might imagine. Let's take the two. I'd like you to tell me. Can I just make one point, Your Honor? And that is if you look at the evidence that was given in the arbitration itself, one thing that the union's witness testified. And the reason for two strikes would be before the time was set was they could do some investigation, some background, and see if there was a decision that one of the nine arbitrators had made that they weren't happy with. And they could strike him. But before any, that it had to be 24 hours. Well, I thought your position was we don't go behind it because it's unambiguous. Well, my position is that we don't go behind it because it's unambiguous. But there's a logic as to why it's unambiguous. But you have to start. You don't start with the testimony and then make it ambiguous. You have to start with the text to see whether it's ambiguous. You are absolutely correct, Your Honor. All right. Let's stick with the text one minute. The time is modified by the clause the arbitration hearing is scheduled. The time the arbitration hearing is scheduled. That could either mean the hearing date or the scheduling date, right? Correct. The date it is scheduled. It was scheduled on June 1. The hearing date was August 14. Two different times, right? If it means one scheduled, you didn't do it in time and the arbitrator was correct. If it's before the hearing date, your argument is you did it in time because the hearing date was postponed twice and you did it before the hearing. But that raises a second ambiguity is whether the scheduled, you don't have to put the word initial in, I think a postponement could be construed to be different from the date it is scheduled. Well, obviously, Your Honor, we disagree and think that you have to put the words initially or first or insert some term. Well, how do you set that aside? That's a better argument you have. But you haven't indicated why it's ambiguous whether it's a hearing date or a scheduling date. Why it's ambiguous versus a hearing date versus a scheduling date? Why can't it mean either of those two things? The date that it was scheduled or the date of the hearing? Because we think, Your Honor, because the parties, if you look at what normally happens. Only the text. Only the text. But if you look at what the text actually says, when the hearing is scheduled to begin, the hearing can begin on any number of dates. And if you look at the language that was closed off. But if the key language, modifying language is the verb, is scheduled, the time the arbitration hearing is scheduled to begin, it was scheduled on June 1. Correct. But the hearing itself was scheduled to begin, or the date of the hearing for itself is August 14. Wouldn't it be something for interpretation as to which one of those is the best interpretation? Well, obviously, Your Honor, we disagree with that position. I mean, we think that. Why would you disagree? It could be read either way. Because we think that it's clear if you look at the gap that was closed in the 2004 contract, in 2007 between the parties where they talked. It's not focusing on the text, is it? No, Your Honor. It's not focusing on the text. But it is focusing on part of the record that was heard before the arbitrator. I understand. But we don't look at that until we look at the text. Correct. If the text proves an ambiguity, now you're going to look at the other stuff and decide whether the arbitrator came up with a reasonable decision. Correct. And obviously, we submit that he did not. I understand that. Your Honor, as I said, we view this as a situation where an arbitrator basically we think that the position taken by the union before the district court, one that Judge O'Grady got into with the union, was the question of whether or not there could be a line drawn in this case. In other words, does the court have the right to look at the language and to determine whether or not there is an ambiguity, as Judge Neumeier has pointed out. We think the position taken by the union at the court below is really pretty much to obliterate that line. To say that there is no circumstance where a district court can actually look at the language itself. And that was part of the issue in the court below. And I think we do believe that this constitutes one of those cases, both because of the ex parte nature of the proceeding, both because of the fact that we do believe the arbitrator did have an interest, wasn't de minimis, it was three times what he would normally have received as a cancellation fee by going ahead with hearing this case. And there are a lot of things the arbitrator could have done here. He could have sent this case back to the parties. He could have said, I'm going to decline to continue to hear the case. The case could have been arbitrated before a different arbitrator as to the issue as to whether or not his removal was proper. But the one thing he should not have done, Your Honor, is gone ahead and heard this case. And frankly, in a situation like this... Well, let me ask you this. If he concluded in his interpretation, and let's assume it's a reasonable interpretation, he concluded that you had not effectively removed him, he's deciding his own jurisdiction, right? He's deciding his own authority, yes, he is. We do that as a court, too. And so at that point, he did have authority to go ahead, right? If he concluded that reasonably. If he, in fact, concluded that reasonably, yes, he had authority to hear the case. So to determine whether you conclude it reasonably, you first look at the text. If it's ambiguous, then you give him the opportunity to look at the external evidence to see whether it supports, has some support for his position. And if so, you leave him alone, don't you? Yeah, but I think... As a matter of fact, we may leave him alone even if it doesn't have much, if it's not the best interpretation. Exactly. It doesn't have to be reasonable, does it? But it can't, it doesn't necessarily have to be reasonable, Your Honor. It could actually be wrong. But it can't say up is down, or right is left, or black is white. Well, but he can be wrong. He can be wrong. An arbitrator can be wrong. But he can't add to, modify, or add something to the bargain that the parties agreed to. But he can decide incorrectly. He can decide incorrectly, but he cannot add to, modify, or extend the contract. And there's specific language in Article 17A in this agreement that says that. And that is, in fact, what we believe he did here. And this is not a situation where the grievant, Mr. Peterson, is going to lose his day in court. I mean, this is a case that will go back to a different arbitrator, an arbitrator who is not burdened by the issues that were burdening Arbitrator Ross here. In this case, we'll proceed eventually with arbitration. How would you articulate the difference between add, modify, or alter, on the one hand, and interpret, or construe, on the other hand? Very common legal words. I think those are very common legal words. And how would you articulate the difference? And I think the difference is a hard one to articulate, but I will say this. If you look at the language, and if you, I think, look at your decisions in Mountaineer, Gas, and Champion, and if you have to parse that phrase and add a word, which is what Judge O'Grady found here, the word initially scheduled, then, in fact, you are adding to or modifying that contract. And I think that's what the parties bargained not to have happen. It seems a little circular. It may be a little bit circular. How can you interpret an ambiguity without, as you put it, adding a word? Because if you say it's ambiguous, that means it means something. It means two things. And so you have to clarify to identify which is the preferred or the most reasonable or the most sensible reason. And you do that by adding a word or two. Correct, Your Honor. But I think what an arbitrator is not free to do is to declare an ambiguity and then foreclose any review by a federal district court. And I think that is one of the things that- But what if there is an ambiguity? Well, that is obviously something for the district court to decide, and the district court decided here that there was no ambiguity. But you've just gone along with me to say I could read it at least two ways. There's another problem. No, I don't think you can read it necessarily two ways, Your Honor. You think you can read June 1st, the time that the hearing is scheduled? I think you can read this language only one way, Your Honor, that when the hearing was scheduled to begin, and I say that in part because of looking at the arbitrator's decision and the testimony of the- It was scheduled to begin on August 14th, right? Let's say the parties show up and a witness calls in and said, I've just contracted pneumonia. I can't make it. The arbitrator says, well, let's postpone it until November. And there was a- And the question is, is the November date the date it's scheduled to begin, or was August 14th the date? My hypothetical. Excuse me, Your Honor, the November date is the rescheduled date? Yes. November date. That's a postponement, right? It was scheduled to begin on August 14th. Correct. You don't need the word initially to conclude that the November date is just a postponement. It's not the date the hearing was scheduled to begin. But we would submit that that was what the party's intent was in this case, Your Honor. And we say that because of what the- You can't tell that from the text. Well, you can tell that from the text of the decision, because at one point the company had made a proposal that said, if in fact before the first witness was actually sworn- You're going to extraneous evidence to eliminate an ambiguity. I'm going to extraneous evidence to support the position that there is no ambiguity here, Your Honor. You can't do that, can you? You've got it backwards. You look at the text to see if there is- I agree that you have to look at the text first to see that there's no ambiguity. Basically, as I said, our position is that when you get to the text in this case, that, in fact, obviously we respectfully disagree with you that there is no ambiguity in this case, and that the court was not free- The court was free to, in this case, look at the language. I think there was a discussion below as to whether or not the court even had the opportunity to look at the language in the first instance to determine if, in fact, there was an ambiguity. And at some point, obviously, the union conceded that the judge did have the authority to look at the language to determine on his own whether or not there was, in fact, an ambiguity in this case, which is what the lower court did here. The district court seemed to read it unambiguously to say the date the hearing begins, leaving out the word scheduled, right? And he didn't address that? He did believe that the same position I'm espousing to you, Your Honor, that the date the hearing begins was the critical date. So he disagreed with the arbitrator, correct? On the interpretation of the CBA. He thought the language was unambiguous. Right. And so what we are reviewing, de novo, is whether the district court went too far in granting you relief on the basis of the district court's different interpretation of the CBA. Would you agree with that? I would agree with that. And I would also say that I think the district court judge was obviously entitled to look at the language and make that determination. Otherwise, there is no review. Well, but you were seeking vacator of an arbitral award, right? Correct. And we've got a million cases out there that say it's the most deferential standard of review. The review of a federal court of an arbitrator's award is highly deferential, et cetera, et cetera. And you're saying what? Well, I'm saying that the district court here granted appropriate deference and came within that very narrow band of issues that permits a federal court to vacate an arbitral award. Yes, and I would say that you are correct. It obviously is a very narrow standard of review. And I would say that there are a number of cases, including by this court. But I would say to you that if you look at PPG Industries or Keffer v. H.K. Porter or Intermet and put them on one side and look at your decisions in Champion International Products or Mountaineer Gas, that this case is much more akin or falls into that limited category of Mountaineer Gas and Champion as opposed to the other cases. But if Judge Niemeyer is right that there's an ambiguity in the CBA, you absolutely lose here, don't you? If there is, in fact, an ambiguity, that has to be resolved. If it doesn't fall into, I think, in the Warrior and Gulf case, Your Honor, one of the first cases of the Steelworkers Trilogy, the Supreme Court said basically you have three types of contract provisions. You have those types of provisions that are automatically applicable, that really don't take any guidance or extraneous evidence to interpretate. You have a second category that provide more or less specific standards that require reason and judgment, and that's where an arbitrator comes in. And then the third category where basically the parties have almost kind of kicked the can down the road, where they basically, as the Court said, some do little more than leave problems to future consideration, obviously where there's a gap that an arbitrator has to step in and fill. We think this case obviously falls into the first category where there is no ambiguity, where there was no gap to fill and where the arbitrator wasn't. And if you're right on that, the arbitrator didn't have jurisdiction and then violated the basic terms of the contract. Correct. He's not a legitimate arbitrator. Correct. And if, in fact, I'm incorrect and there is an ambiguity, then we fall into the second or third category. Yes, Your Honor. If there's nothing further from the Court, thank you. Thank you. Mr. Murphy, reply. Thank you. I'll just make a couple of points. First, Mr. Santucci suggested that the union conceded at the District Court in front of Judge O'Grady that the Court was the appropriate body to determine ambiguity. We didn't concede that. We, in fact, argued exactly the opposite. Of course, the Court can look at the contract language. But if the Court concluded that the language was unambiguous and the arbitrator just declared it ambiguous, then you go to the essence of the contract under Champion and the whole power of the arbitrator to do that is based on a misreading of the contract. Which, Your Honor, he can do. He can do that. That's what we said. If he gets it wrong, he's entitled to get it wrong. The parties agreed not to have that there are cases. But the District Court, if it goes to the arbitrator's jurisdiction and the arbitrator says, oh, I find an ambiguity, therefore I have power, it seems to me the District Court can correct that by looking at the text and saying it's not ambiguous. It doesn't give him power. The judge would have to do that in a way that shows that he went beyond the essence of the contract and imposed his own standard of industrial fairness and justice, and he didn't do that here. He looked at the bargaining history, which this Court has said is perfectly appropriate to do. This Court has also said it's the job of the arbitrator and part of his interpretation is to determine ambiguity. The second point is, this is just a practical point, Mr. Peterson is the grievant here. He's been out of work since 2012 in February. Mr. Santucci said he'll have his day in court. Okay. Well, he's been out of work now for over two years. If he succeeds, he'll get back pay. The award was full back pay and reinstatement, less a 14-day suspension. So, you know, we're all sitting here and standing here, but this man has been out of work for two years. The other point that the Court should be aware of, in the PBG case and the Intermittent Court case, which we rely on in our briefs, those two cases had to do with, the PBG case had to do with the definition of actively employed and bonuses and if employees that were on strike were actively employed. And similarly in Intermittent, the issue was vacation benefits and whether or not earned vacation benefits were entitled to employees when a company went bankrupt. In both of those cases, that wasn't addressed in the contract language, so it was silent. So the arbitrator had to go and look at extrinsic evidence, in this case mostly bargaining history. That's exactly what happened here. On the face of the contract, you cannot tell what was meant by the parties. It was silent. It didn't say scheduled or rescheduled. The language was ambiguous and that's exactly what PBGC and Intermittent Court say. Once that happens, it's the job of the arbitrator to figure out what the intent of the parties is. That's his job. If there's no further questions. Thank you, Mr. Mark. Thank you. All right, I will ask the clerk to adjourn court and then we'll come down and greet counsel. This honorable court stands adjourned, signed and dagged. That's the United States and this honorable court.
judges: William B. Traxler Jr., Paul V. Niemeyer, Andre M. Davis